IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CATHERINE A. MARZINI,

                          Plaintiff,                              OPINION AND ORDER

    v.

                                                            14-cv-787-wmc

CAROLYN COLVIN, Acting Commissioner
of Social Security,

                          Defendant.

---

Pursuant to 42 U.S.C. § 405(g), plaintiff Catherine A. Marzini seeks judicial review of a final decision of the defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, which denied her application for Supplemental Security Income. On June 24, 2016, the court heard oral argument on plaintiff's contention that the administrative law judge ("ALJ") failed to provide a sufficient explanation for his giving "little weight" to the written opinions of Nurse Practitioner Laurel Sorenson, as co-signed by a physician. For the reasons set forth below, the case will be remanded to the Commissioner for further proceedings.

BACKGROUND

Marzini claims a disability onset date of May 1, 2004, primarily because of low back pain resulting from a work-related injury sustained in 2002 and chronic low back and neck pain since that time. Marzini was 48-years old when she first applied for benefits on February 14, 2011. She has past work experience as a certified nursing assistant and housekeeper, but has not worked since applying for benefits.

In the summer of 2010, Dr. Josephine Ng diagnosed Marzini with discogenic back pain based on the results of a magnetic resonance imaging study ("MRI").[1]  (AR 299, 463-465.)  Critical to Marzini's challenge are the treatment notes and opinion of Nurse Practitioner Laurel Sorenson, whom Marzini saw for the first time on September 15, 2010 for a variety of health complaints.  (AR 434-442.)  At that visit, Marzini told Sorenson that she had a "permanent 20-pound lifting restriction."  (AR 436.)  On exam, Sorenson noted Marzini had a full range of motion in all joints, a grossly normal neurosensory and motor strength, a normal gait, and a normal affect.  (AR 439.)

From September of 2010 to December of 2012, Marzini saw Sorenson on several occasions under the supervision of Dr. Espada and other doctors for pre-operative physical examinations and unrelated health complaints.  Throughout this time, Sorenson regularly noted that Marzini had normal strength, reflexes, and sensation; was "able to climb stairs easily;" and was in an exercise program.  (AR 353, 507, 509, 793, 795-796, 732-734, 773-775,745-748, 711-716, 698-700, 686-689, 631-632.)  From October 2011 to July 2012, Marzini also saw another nurse under Dr. Espada's supervision for diet and weight loss, to whom she reported exercising as much as 30-60 minutes a day; walking for most of her errands; climbing stairs 15 minutes a day; doing squats, sit-ups and using an exercise machine; and at times, modifying her exercise routine due to low back pain.  (AR 647, 667, 601, 647, 643, 646, 737-739, 815, 824, 680, 722-723.)

---

[1] Neuropathic back pain radiates to the extremities or torso from pressure on peripheral or central nerves, while discogenic back pain originates from intervertebral discs themselves.  *See* Taber's Cyclopedic Medical Dictionary 463 (22nd ed. 2013).

On April 18, 2011, Marzini saw Dr. Ng regarding low back pain and reported numbness in her right leg and constant bilateral lumbar spine pain of a "7-8," which increased with activity.  (AR 513.)  Marzini also reported that the Flexeril and Gabapentin she was taking were mildly effective, but that Gabapentin caused headaches. As a result, Dr. Ng discontinued the Gabapentin and ordered physical therapy.  (AR 807-808.)

On September 15, 2011, Marzini saw Dr. Ng again, advising Ng that her low back pain was worse than before.  (AR 770.)  Ng assessed Marzini with lower extremity radiculitis and spinal nerve root inflammation, causing Ng to order another MRI.  (AR 770.)  Weeks later, Marzini saw Ng again.  This time, Marzini reported that she "felt better" and that her pain was localized to the middle of her lumbar spine and infrequently radiated to her right leg.  (AR 750.)  Marzini continued to see Ng from September of 2011 to August of 2012 for low back pain, demonstrating full motor strength.  Her MRI also remained essentially unchanged from the previous one, although her pain had reportedly increased.

By December 2012, Marzini was complaining to Sorenson that her low back pain was getting worse and that she was "thinking about using" a cane.  Although she was tearful during a December 13 exam and demonstrated some weakness in her right leg, Sorenson found she was in no acute distress.  (AR 878.)  On August 13, 2012, Marzini sought a second opinion from Dr. Panna Varia, M.D., who noted that Marzini was able to walk without much difficulty, had normal strength and sensation, unrestricted hip range of motion, and a negative straight leg raise.  (AR 825-827.)

3

A residual functional capacity assessment performed by consulting physician Dr. Pat Chan, M.D., on April 15, 2011, found Marzini able to lift 20 pounds occasionally, 10 pounds frequently, as well as stand, sit or walk 6 hours a day with unlimited pushing and pulling and no postural limitations.  Dr. Chan also noted that Marzini had:  minimal lumbar degenerative disease with no central canal compromise; normal strength and sensation; a negative straight leg test; and the ability to climb stairs easily, to shop, and to make meals.  (AR 482-495.)

On May 29, 2013 (after the administrative hearing before the ALJ on May 21, 2013), Nurse Practitioner Sorenson completed a residual functional capacity assessment, which was co-signed by Dr. Espada.  (AR 917.)  Sorenson concluded that Marzini had a poor prognosis, a herniated L4-5 disc, facet hypertrophy, lower extremity pain and weakness, decreased range of motion of the spine, and pain severe enough to interfere with concentration and attention "often or at least 50% of the day."  She further noted that Marzini was "incapable of even low stress jobs" due to an inability to tolerate work stress; was incapable of working on a part-time basis; could not lift 10 pounds; and would miss work "four or more times per month."  (AR 918-919.)

On June 6, 2013, the ALJ issued a written decision finding Marzini severely impaired by spinal degenerative disc disease and obesity.  (AR 37.)  Although he reviewed Marzini's history of depression and childhood trauma, and use of anti-depressants and anti-anxiety medication, he noted that she had reported feeling better overall and that her mental examinations were generally normal without focal deficits or mood symptoms.  The ALJ also noted that Marzini's records reflect occasional tearfulness

4

related to pain, situational or financial stressors, or death in the family.  (AR 35-36.)

Even so, the ALJ discounted Marzini's claims regarding the limiting effects of her symptoms because in his view, those claims conflicted with the medical records, largely unremarkable physical exams, her daily activities, and her exercise regimen.  For largely the same reasons, the ALJ gave Sorenson's opinions "very little" weight, plus he found that Sorenson lacked specialty training to state an opinion on Marzini's mental and physical condition, and did so without examination or reference to objective facts.  By contrast, the ALJ gave the state non-examining physician opinion some weight because "there exist[] a number of reasons to reach similar conclusions (as explained throughout this decision)."  (AR 43.)  Ultimately, the ALJ concluded that Marzini had an RFC to perform limited light work, including performing her past relevant work as a clerk, for which sufficient jobs existed to find her not disabled.  (AR 37.)

## OPINION

Marzini argues that the ALJ failed to provide "good reason" and "sufficient explanation" for giving "little weight" to a treating source opinion.  The Commissioner contends that the court should read the ALJ's opinion as a whole and consider the explanations that he provided regarding Marzini's credibility.  In the alternative, the Commissioner argues that even if the ALJ did not adequately explain himself, it was harmless error because well-supported, contradictory evidence was discussed elsewhere in the opinion.  *Bauer v. Astrue*, 532 F.3d 606, 608-609 (7th Cir. 2008) ("once well-supported contradicting evidence is introduced the treating physician's evidence is no longer entitled to controlling weight.").

On judicial review, a court will uphold the Commissioner's decision *if the ALJ* applied the correct legal standards *and* supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011).   According to 20 C.F.R. § 404.1527(c)(2), and the Seventh Circuit, an ALJ is required to assign a treating source physician's opinion controlling weight, provided the opinion is supported by "medically acceptable clinical and laboratory diagnostic techniques[,]" and is "not inconsistent" with substantial evidence in the record.  *Schaff v, Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Jelinek*, 662 F.3d 805, 811 (7th Cir. 2011).  When an ALJ does not give a treating source controlling weight, the ALJ must consider the type, length and nature of the relationship, frequency of examination, specialty, tests performed, and consistency and supportability of the opinion.  *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); 20 C.F.R. § 404.1527(d)(2).  An ALJ who rejects a treating source opinion must also provide a sound explanation for doing so.  *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011).

Although the ALJ's opinion contained a detailed discussion of the medical records in assessing Marzini's credibility, it remains unclear whether the ALJ even began with the required presumption that Sorenson's opinion was entitled to controlling weight.[2] Contrary to the government's assertion during oral argument that it is "easy to fall out of the presumption" of controlling weight, or that the ALJ need not elaborate on what evidence was contradictory, the Seventh Circuit has held that contradicting evidence must be both introduced and discussed.  *Bauer*, 532 F.3d at 608.  Once having met its

---

[2] At the oral argument, the parties did not dispute that Nurse Practitioner Sorenson's opinion qualified as a treating source opinion because it was cosigned by Dr. Espada, who supervised Sorenson's treatment of Marzini for almost three years.

burden, "the treating physician's evidence is just one more piece of evidence for the [ALJ] to weigh and must be reviewed against a checklist of factors to help the ALJ determine what weight to give the evidence." *Id.* Even then, it is an additional step for an ALJ to decline to give a treating physician's opinion controlling weight, and giving it "little weight."

The Commissioner argues that the ALJ must have considered the initial, required presumption in favor of the treating physician, because he stated generally, "I have considered opinion evidence in accordance with the requirements of 20 C.F.R. 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p."[3] (AR 37.) This vague boilerplate statement, however, leaves unclear whether the ALJ *actually* applied the controlling presumption to Sorenson's opinion. Regardless, the ALJ provides no indication that he specifically evaluated the relevant factors outlined in the regulation, including the length of the treating relationship, frequency of exam, or Sorenson's previous exam findings. Other than a conclusory analysis of Sorenson's specialty and the consistency of her opinion with the overall record, we are left to guess the reasons for the ALJ's conclusion that Sorenson's opinion should not be given controlling weight, much less was deserving of little weight.

---

[3] 20 C.F.R. § 416.927 ("Evaluating Opinion Evidence" treating sources, examining sources, non-examining sources, other opinions, state examining consultants); SSRs 96-2p ("Giving Controlling Weight to Treating Source Medical Opinions"); 96-5p ("Medical Source Opinions On Issues Reserved To The Commissioner"); 96-6p ("Admin[.] Findings of Fact by State Agency Medical and Psychological and Other Program Physicians"); 06-3p ("Considering Opinions and Other Evidence from Sources Who Are Not 'Acceptable Medical Sources,'" such as Nurse Practitioners).

As Marzini points out, the ALJ failed to identify which of the limitations that Sorenson assessed were inconsistent with the medical record *and* how they were inconsistent.   In the ALJ's credibility discussion, it is also unclear which, if any, of the records that the ALJ cites are Sorenson's or how they conflict with her opinion. Certainly, the ALJ failed to discuss specific inconsistencies or discrepancies, stating only that Sorenson's RFC "opinions and conclusions [] are not supported within the document itself or by treatment notes found in the other exhibits in the file."  (AR 43.) At minimum, the ALJ should have explained:  (1) how he evaluated the evidence; (2) how Sorenson's opinion was inconsistent with the overall record; and (3) why his assessment was accurate and Sorenson's was not.

Although weighing of source opinions can at times collapse into a credibility assessment if the opinion is not supported by objective evidence, the Seventh Circuit has repeatedly emphasized that the rejection of treating source opinions must be explained adequately and completely.  *See Scott,* 647 F.3d at 739.  A conclusory sentence stating that the opinion is inconsistent with the remainder of the record is insufficient. *See Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000) (An ALJ must "build an accurate and logical bridge from the evidence to his conclusion.").  Nor can this court supply that bridge for the ALJ.  *See Spiva v. Astrue*, 628 F.3d 346 (7th Cir. 2010) ("cannot consider the post hoc arguments not relied upon (so far as it appears) by the ALJ").

Therefore, although the court concedes that there *may* well be good reasons and adequate support in the record for the ALJ's rejection of Sorenson's RFC, the ALJ must

8

explain his reasoning on remand, as well as support it with specific evidence in the record.

### ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Commissioner of Social Security, denying plaintiff Catherine A. Marzini's application for disability benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.  The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 15th day of August, 2016.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge